# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

| | |
|---|---|
| SUSAN THOMPSON ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 09-CV-0789-NKL |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## ORDER

Plaintiff Susan Thompson ("Thompson"), challenges the Social Security Commissioner's ("Commissioner") denial of her claim for disability insurance benefits. This lawsuit involves an application for disability insurance benefits under Title II of the Social Security Act ("the Act"), 42 U.S.C. §§ 401-433 and under Title XVI for supplemental security income.

Thompson filed applications for disability benefits on December 29, 2004, and her applications were denied initially. On October 10, 2007, following a hearing, an administrative law judge ("ALJ") rendered an unfavorable decision finding that Thompson was not under a "disability" as defined in the Act. Following Thompson's request for review, the Appeals Council of the Social Security Administration ("Appeals Council") remanded the case to the ALJ for further proceedings. The Appeals Council was concerned with the development of the record regarding Thompson's limitations in light of her mental

1

diagnoses, among other things.

On July 1, 2009, after a supplemental hearing, the ALJ rendered an unfavorable decision, finding that despite her severe impairments, Thompson could perform past relevant work as a hotel reservations clerk and receptionist. The Appeals Council subsequently denied Thompson's request for review, rendering the ALJ's decision the final decision of the Commissioner. The Act provides for judicial review of a final decision of the Commissioner. *See* 42 U.S.C. §§ 405(g), 1383(c)(3).

Thompson argues that substantial evidence to support the ALJ's decision does not exist because the ALJ failed to properly assess her mental residual functional capacity ("RFC") at step four of the sequential process. The Court reverses and remands the ALJ's decision because it finds that the ALJ failed to properly evaluate Thompson's mental residual functional capacity.

## I. Factual Background

The complete facts and arguments are presented in the parties' briefs and will be duplicated here only to the extent necessary.[1]

Thompson's medical records contain diagnoses for her mental disorders. Medical records indicate that on June 25, 2007, Dr. Nallu Reddy, at the Swope Parkway Health Center, referred Thompson to Janice Beasely, MA LCSW, who completed an initial assessment and noted Thompson has Major Depression Recurrent moderate with psychotic

---

[1] Portions of the parties' briefs are adopted without quotation designated.

features and generalized anxiety and assigned a Global Assessment Functioning ("GAF") of 45.[2] On July 11, 2007, Dr. Reddy assessed Thompson with Bipolar Disorder, mixed type and assigned a GAF of 38. On August 29, 2007, November 7, 2007, November 28, 2007, and August 18, 2008, and August 27, 2008, Dr. Reddy noted Thompson's Bipolar Disorder diagnosis and assigned a GAF of 38.

Thompson was admitted to Two Rivers Psychiatric Hospital from August 18, 2008 through August 21, 2008, and the discharge summary indicates a discharge diagnosis of Bipolar mood disorder, not otherwise specified, cannabis dependance with a GAF of 40-50.

Thompson also has a 21-year history of marijuana abuse and entered a drug treatment facility as a condition of probation in May 2008. At the supplemental hearing, Thompson testified that she had been convicted of a drug offense and was put on probation in 2005. She previously attended two drug treatment facilities without success. In October 2008, Thompson graduated from a drug treatment facility and admitted that she "had a blunt" to celebrate her graduation. Thompson testified this was the last time she used marijuana.

## II. Discussion

---

[2]The GAF scale represents a clinician's judgment of an individual's overall level of functioning. It is rated with respect to psychological, social, and occupational functioning, and should not include physical or environmental limitations. A GAF score of between 31 and 40 denotes major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood. *See Diagnostic and Statistical Manual of Mental Disorders*, 32, 34 (4th ed. text revised 2000) (DSM-IV-TR). A GAF score of 41 to 50 reflects serious symptoms (e.g., suicidal ideation, severe obsessional rituals, shoplifting) or serious impairment of social or occupational functioning (e.g., no friends, unable to keep a job). *Id.* A GAF score of 51 to 60 represents moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks), or moderate difficulty in social, occupation, or school functioning (e.g., few friends, conflicts with peers or co-workers). *Id.*

ALJs evaluate disability claims through a five-step process:

> The claimant must show he is not engaging in substantial gainful activity and that he has a severe impairment. Those are steps one and two. Consideration must then be given, at step three, to whether the claimant meets or equals [an impairment listed in the regulations]. Step four concerns whether the claimant can perform his past relevant work; if not, at step five, the ALJ determines whether jobs the claimant can perform exist in significant numbers.

*Combs v. Astrue*, 243 Fed. Appx. 200, 202 (8th Cir. 2007) (citing SSR 86-8, 20 C.F.R. §§ 404.1520, 416.920).

Thompson argues that the ALJ erred at step four when evaluating her mental RFC and ability to return to her past work. Specifically, Thompson argues that the ALJ used her own lay opinion to determine Thompson's mental RFC.

The Social Security Administration ("SSA") regulations provide:

> Recontacting medical sources. When the evidence we receive from your treating physician . . . or other medical source is inadequate for us to determine whether you are disabled, we will need additional information to reach a determination or a decision. To obtain the information, we will take the following actions.
>
> (1) We will first recontact your treating physician . . . or other medical source to determine whether the additional information is readily available. We will seek additional evidence or clarification from your medical source when the report from your medical source contains a conflict or ambiguity that must be resolved, the report does not contain all the necessary information, or does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques. We may do this by requesting copies of your medical source's records, a new report, or a more detailed report from your medical source, including your treating source, or by telephoning your medical source. In every instance where medical evidence is obtained over the telephone, the telephone report will be sent to the source for review, signature and return.

20 C.F.R. § 404.1512(e) (emphasis added); *see also Snead v. Barnhart*, 360 F.3d 834, 838-39

(8th Cir. 2004) ("Well-settled precedent confirms that the ALJ bears a responsibility to develop the record fairly and fully, independent of the claimant's burden to press his case.").

Here, the ALJ neglected her duty to resolve the issue of limitations on Thompson's ability to work in light of her mental illness diagnoses. No doctor has opined on Thompson's capacity to work taking into account her mental illness. The ALJ did not contact Dr. Reddy for a medical source statement, though counsel for Thompson noted at the supplemental hearing that he sent a medical source statement to Dr. Reddy who failed to return the form. The ALJ did not order a consultive examination, despite Thompson's request for one. Even the Appeals Council previously expressed concerns about the ALJ's development of the record on this issue. Although the ALJ discounts various aspects of Dr. Reddy's medical records, there still exists no medical evidence in the record opining on Thompson's ability to work in light of her diagnosis.

This Court remands the case to the SSA for further development of the medical record with regard to Thompson's mental illness diagnoses. Specifically, the SSA is directed to (1) order a consultive examination of Thompson; and (2) submit interrogatories to Dr. Reddy to determine what functional restrictions she believes are appropriate as part of Thompson's diagnosis.

## III. Conclusion

Accordingly, it is hereby ORDERED that Thompson's Petition [Doc. # 6] is GRANTED IN PART. The decision of the ALJ is REVERSED and the case is

REMANDED for further consideration consistent with this opinion.

                                         s/ Nanette K. Laughrey
                                         NANETTE K. LAUGHREY
                                         United States District Judge

Dated: July 27, 2010
Jefferson City, Missouri